Eastern District of Kentucky
**F I L E D**

DEC 0 4 2009

AT LEXINGTON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

**UNITED STATES OF AMERICA**

**V.**                                              **INDICTMENT NO.** _5:09-CR-181 JMH_

**BRYAN COFFMAN,
MEGAN COFFMAN,
VADIM TSATSKIN,
      aka VICTOR TSATSKIN, and
GARY MILBY**

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

**COUNTS 1 - 10
18 U.S.C. § 1341**

1.      From on or about a date in 2004, and continuing through the date of this

Indictment, at Fayette County, Franklin County, and other places in the Eastern District of

Kentucky, and elsewhere,

**BRYAN COFFMAN,
VADIM TSATSKIN,
aka VICTOR TSATSKIN, and
GARY MILBY,**

and others known and unknown, devised and intended to devise a scheme and artifice to

defraud and to obtain money from persons by false and fraudulent pretenses and

representations, utilizing the following manner and means:

## BACKGROUND
## MANNER AND MEANS

2.      The scheme involved a fraudulent operation of what can be a legitimate

securities investment plan, known generally as an oil or gas well drilling "program".

Legitimate programs involve the use of money from a group of private investors to drill

oil and gas wells.  In the typical plan, a General Partner establishes and manages the

program.  First, a particular likely geographical location is identified, a lease of the

mineral rights to that location is negotiated, and an estimate of the cost of drilling and

production is calculated.  The program is then described in a "Private Placement

Memorandum"(hereafter "PPM").  This informs potential investors of the terms, risks,

and potential profits of the investment.  Then shares of the program are sold to individual

investors who are known as "Limited Partners" or "Participants".  If the drilling is

successful and a sufficient quantity of oil or gas is located, an operating well is

established.  The oil or gas is sold to a local distributor.  The Limited Partners divide the

profits according to the agreement set out in the PPM.

3.      As part of their scheme to defraud, the defendants operated an oil and gas

drilling business through two companies or entities which served as General Partners in a

number of programs.  These entities are: Mid-America Energy, Inc. (hereafter Mid-

America) and Global Energy Group (hereafter Global).

4.      As part of the scheme to defraud, the Defendants solicited and sold units of

programs through Mid-America from 2004 until early 2008.  These programs included

2

among others: America Oil #1, LLP; Big Creek Oil #1, LLP; Black Gold Oil #1, LLP;

Black Gold Oil #2, LLP; Black Gold Oil #3, LLP; Black Gold Oil #4, LLP; Black Gold

Oil #5, LLP; Black Gold Oil #6, LLP; Black Gold Oil #7, LLP; Black Gold Oil #8, LLP;

Black Gold Oil #9, LLP; Black Gold Oil #10, LLP; Black Gold Oil #10 AUX, LLP;

Black Gold Oil #11, LLP; Eagle Oil #1, LLP; Eagle Oil #5, LLP; Eagle Oil #6, LLP;

Eagle Oil #7, LLP; Eagle Oil #7 AUX, LLP; Eagle Oil #8, LLP; Eagle Oil #9, LLP;

Eagle Oil #9 AUX, LLP; Eagle Oil #10, LLP; Eagle Oil #11, LLP; Fort Knox #3, LLP;

Fort Knox #4, LLP; Fort Knox #8, LLP; Fort Knox #10, LLP; Fort Knox #11, LLP; Fort

Knox #12, LLP; Fort Knox #14, LLP; Fort Knox #15, LLP; Freedom Oil #1, LLP;

Liberty Oil #1, LLP; Maverick Oil #1, LLP; Murfreesboro Oil #1, LLP and others. The

funds obtained from investors under these programs was approximately $19,250,000.

5.      As part of their scheme to defraud, the defendants solicited and sold units

through Global from mid 2007 to the date of this Indictment. These programs included

among others: New Gold #8, LLP; New Gold #9, LLP; New Gold #10, LLP; New Gold

#11, LLP; New Gold #12, LLP; New Gold #13, LLP; New Gold #14, LLP; New Gold

#15, LLP; New Gold #16, LLP; New Gold #17, LLP; New Gold #18, LLP; New Gold

#20, LLP; New Gold #21, LLP; New Gold #22, LLP and others. The funds obtained

from investors under Global programs was approximately $14,750,000.

## Mid-America Phase

6.      It was part of the scheme to defraud that the defendants and their agents

3

made false, material misrepresentations to potential investors in Mid-America programs including the following, among many others:

    a)    Misrepresentations regarding expectation of production or profit:

        1)    The wells being drilled would last for decades, when in fact wells in that area generally last a few years.

        2)    Successful production of oil was guaranteed, when in fact wells in Kentucky have a significant failure rate.

        3)    Investors could anticipate income from their investment of approximately $1300 to $3300 per month, when in fact wells in the area being drilled typically produced little or no commercial quantities of oil, and no investor saw close to that level of income.

        4)    The investors could expect a return of their investment within a short period of time, when in reality no investor recouped his initial investment.

        5)    The investors faced no risk, when in fact every investor lost money.

        6)    Milby had an extensive track record of successful oil and gas production all over the United States, when in fact he had produced very few successful oil wells.

        7)    Milby had wells in Texas that were currently on secondary recovery, when in fact he had no wells currently operating in Texas at the time that statement was made.

4

b)     Misrepresentation regarding use of investor money:

     1)     All of the investor money would be used for well site acquisition, well completion, drilling, well site testing, selling commissions and other related production expenses, when in fact Milby, Coffman and others planned to take substantial "profits" off the top of investor money.

     2)     Investor money would be placed in individual accounts for each program and that the funds would be segregated from other programs and general expenses and other accounts of the general partner, when in fact investor funds from all programs were co-mingled.

     3)     All investor funds would be spent on oil production related expenses, when in fact, large sums of money were diverted for personal purchases such as vehicles, parties, helicopters, entertainment, and other personal expenses.

     4)     Bryan Coffman was the attorney and CPA for Mid-America, when in fact he handled and distributed investor funds.

c)     Misrepresentation regarding compliance with state and federal laws and regulations:

     1)     The program shares were registered securities, when in fact they were unregistered.

      2)      Because they were registered securities, the solicitation of investor funds and the oil productions had to be done through separate companies, when in fact no such requirement exists.

      3)      Mid-America was in good standing with the Texas Railroad Commission (TRC), which regulates oil and gas in Texas, when in fact Mid-America was in inactive status with the TRC and had been the subject of administrative penalties.

7.     It was part of the scheme to defraud that the defendants and their agents failed to disclose the following material facts to potential investors in Mid-America:

    a)     Omissions regarding the intended use by the defendants of investor funds:

      1)      That Gary Milby, Bryan Coffman, and Megan Coffman would divert substantial sums of investor funds for their personal use.

      2)      That investor funds would be co-mingled with other investor funds.

    b)     Omissions regarding compliance with state and federal laws and regulations:

      1)      That they were selling unregistered securities using unlicensed salespersons.

      2)      That Gary Milby and Mid-America had been subject to regulatory actions and cease and desist orders in Kentucky, Texas, Alabama, Arizona, California, Pennsylvania, and other states.

6

c)      Omissions regarding Gary Milby's financial history.

        1)      That Gary Milby had filed for personal bankruptcy in 2003.

### Global Phase

8.      It was part of the scheme to defraud that the defendants and their agents made false, material misrepresentations  to potential investors in Global programs including the following:

a)      Misrepresentations regarding expectation of production or profit:

        1)      Investors would recoup their investments within one year, when in fact no investor recouped their investment.

        2)      Wells would produce commercial quantities of oil for 10-20 years, when in fact oil wells in Kentucky historically produce low volumes of commercial production for short periods of time.

        3)      Investors could anticipate income from their investment of approximately $4,000 to $6,000 per month, when in fact wells in the area being drilled typically produced little or no commercial quantities of oil, and no investor saw close to that level of income.

b)      Misrepresentation regarding use of investor money:

        1)      American Oil and Gas, LLC was an escrow agent of Global Energy Group, when in fact it was the general operating account for the defendants.

7

2)    Investor money would be placed in individual accounts for each program and the funds would be segregated from other programs and general expenses and other accounts of the general partner, when in fact investor funds from all programs were co-mingled.

3)    All investor funds would be spent on oil production related expenses, when in fact, large sums of money were diverted for personal purchases such as boats, real estate, jewelry, personal investment accounts, personal travel, personal trust funds and family travel.

4)    All of the investor money would be used for well site acquisition, well completion, drilling, well site testing, selling commissions and other related production expenses, when in fact Bryan Coffman, Victor Tsatskin, and others planned to take substantial "profits" off the top of investor money.

c)    Misrepresentation regarding compliance with state and federal laws and regulations:

1)    Global was a foreign corporation and thereby exempt from registration in the United States, when in fact it they were required to register with state and federal security regulators in the United States.

2)    Global was owned and operated out of the Bahamas, when in fact it was operated by Bryan Coffman out of Lexington, Kentucky.

8

    d)      Misrepresentation regarding ownership and control, structure and location of the company:

        1)      The owner and operator of Global was Arthur Chase, when in fact, Arthur Chase was an officer on paper only, and was in the business of setting up off-shore shell companies, and had no day to day control of Global.

        2)      President Arthur Chase had significant oil and gas experience, when in fact, he had no such experience.

        3)      Phone solicitations made to potential investors were made from Lexington, Kentucky, when in fact they were being made from a boiler room in Ontario, Canada.

        4)      The corporate offices for Global were in Lexington, KY, when in fact the address given was a rented, virtual office with a mail drop, physically located adjacent to Bryan Coffman's law office.

9.      It was part of the scheme to defraud that the defendants and their agents failed to disclose the following material facts to potential investors in Global among many others:

    a)      That the defendants had a significant prior history of dry holes.

    b)      That Bryan and Megan Coffman intended to divert investor funds to their personal use.

c) That Global was a continuation of a defunct oil and gas company called Mid America Oil and Gas that was then under criminal investigation and in civil litigation.

d) That Global's sales agents were in Canada instead of Lexington, Kentucky, as investors were told.

e) That Bryan Coffman and Victor Tsatskin owned and operated Global and not Arthur Chase.

f) That wells in Kentucky are largely dry holes or wells that have low production for a brief period of time.

g) That Global did not treat wells to industry standards in order to maximize potential production.

h) That the "profit" the company was earning came from investor funds, not oil production, and that the defendants were raising substantially more money than they needed to drill wells.

10. For the purpose of executing the scheme to defraud, the defendants, on or about the respective dates below, placed in the United States mail or with a commercial interstate carrier at Lexington, Kentucky, and caused to be delivered by United States mail or by a commercial interstate carrier, according to the directions thereon, mail matter as described and as addressed below:

10

| COUNT | DATE | DESCRIPTION | ADDRESS |
|-------|------|-------------|---------|
| 1 | 9-6-07 | Global Energy Literature | To: L. McKinlay<br>Net Electric Limited<br>120 Newkirk Road, Unit 8<br>Richmond Hill, ON CA L4C 9S7<br><br>From: Global Energy Group, LTD<br>Paragon Centre<br>2333 Alexandria Drive<br>Lexington, KY 40504 |
| 2 | 10-10-07 | Global Correspondence | To: L. McKinlay<br>Net Electric Limited<br>120 Newkirk Road, Unit 8<br>Richmond Hill, ON CA L4C 9S7<br><br>From: Global Energy Group, LTD<br>Paragon Centre<br>2333 Alexandria Drive<br>Lexington, KY 40504 |
| 3 | 12-6-07 | Global Energy Literature | To: L. McKinlay<br>Net Electric Limited<br>120 Newkirk Road, Unit 8<br>Richmond Hill, ON CA L4C 9S7<br><br>From: Global Energy Group, LTD<br>Paragon Centre<br>2333 Alexandria Drive<br>Lexington, KY 40504 |
| 4 | 11-16-07 | Check # 7093 Payable to: American Oil and Gas Resources, LLC in the amount of $37,500 USD | Mailed to: American Oil and Gas Resources, LLC<br>2443 Alexandria Drive Suite 140<br>Lexington, KY 40504<br><br>From: Net Electric Limited<br>120 Newkirk Road, Unit 8<br>Richmond Hill, ON CA L4C 9S7 |

| 5 | 9-6-07 | Contract and Check # 667 Payable to: American Oil and Gas Resources, LLC in the amount of $24,500 USD | Mailed to: American Oil and Gas Resources, LLC 2443 Alexandria Drive Suite 140 Lexington, KY 40504<br><br>From: Ove M. Bakmand 267 Blue Grass Blvd. Richmond Hill, ON CA L4C 3H1 |
|---|---|---|---|
| 6 | 5-25-07 | Contract and Check # 0410 Payable to: American Oil and Gas Resources, LLC in the amount of $12,250 USD | Mailed to: American Oil and Gas Resources, LLC 2443 Alexandria Drive Suite 140 Lexington, KY 40504<br><br>From: Ove M. Bakmand 267 Blue Grass Blvd. Richmond Hill, ON CA L4C 3H1 |
| 7 | 5-8-09 | Correspondence to Global Energy | To: Global Energy Group, LTD Paragon Centre 2333 Alexandria Drive Lexington, KY 40504<br><br>From: Miles Davison, LLP, Ward Mathers 1600, 205-5th Avenue S.W. Calgary, Alberta T2P 2V7 |
| 8 | 6-10-08 | Certificates of Ownership for New Gold #16 and #21 | To: Global Energy Group, LTD Paragon Centre 2333 Alexandria Drive Lexington, KY 40504<br><br>From: Steven Saunders 612-500 Country Hills Blvd. N.E. Calgary AB CA T3K 5K3 |

12

| 9 | 6-2-08 | Investor Packet and Solicitation | To: Global Energy Group, LTD Paragon Centre 2333 Alexandria Drive Lexington, KY 40504<br><br>From: R. Diamond Group 13350 Comber Way Surrey BC CA V3W 5V9 |
|---|--------|----------------------------------|------------------------------------------------------------------------------------------------------------------------------------------------------|
| 10 | 6-4-08 | Invoice for Conference Calling | To: Global Energy Group, LTD Attn: Alex Williams 2333 Alexandria Drive Lexington, KY 40504<br><br>From: Infinite Conferencing P.O. Box 836 Short Hills, NJ 07078 |

Each Count in violation of 18 U.S.C. § 1341.

## COUNTS 11 - 19
## 18 U.S.C. § 1343

11.     The allegations contained in Paragraphs 1-9 of Counts 1-10 are

incorporated herein by reference.

12.     On or about the respective dates below,

**BRYAN COFFMAN,**
**VADIM TSATSKIN,**
**aka VICTOR TSATSKIN, and**
**GARY MILBY,**

for the purpose of executing the scheme to defraud, the defendants, did transmit and

cause to be transmitted by means of wire communications in interstate commerce,

writings, signs, signals, pictures and sounds as described below:

13

| COUNT | DATE | DESCRIPTION | ADDRESS |
|-------|------|-------------|---------|
| 11 | 4-4-06 | Bank Wire Transfer for $49,000 USD for Eagle Oil #7 | From: Marco D. Coleman<br>105 Monarch Court<br>St. Augustine, FL 32095<br><br>To: Bryan S. Coffman Escrow, Lexington, KY<br>Central Bank Acct # XXX6612 |
| 12 | 4-6-06 | Bank Wire Transfer for $49,000 USD for Eagle Oil | From: CALCOL, LLC<br>813 Southern Creek Road<br>Jacksonville, FL 33259<br><br>To: Bryan S. Coffman,<br>Attorney at Law, Lexington, KY<br>Central Bank Acct #<br>XXXX6612 |
| 13 | 4-11-06 | Bank Wire Transfer for $49,000 USD for Eagle Oil #7 Aux LLP | From: Charles Greene<br>CG Investments LLC<br>6932 S. Niagara Ct.<br>Centennial, CO 80112<br><br>To: Bryan S. Coffman,<br>Attorney at Law, Lexington, KY<br>Central Bank Acct #<br>XXXX6612 |
| 14 | 8-30-07 | Bank Wire Transfer for $12,250 USD for New Gold #9 Investment | From: Jonathan Victor<br>Scotiabank<br><br>To: American Oil and Gas Resources, Inc.<br>Two Paragon Centre Suite 140<br>Lexington, KY 40504<br>Acct # XXXX7144<br>Routing # 042100146<br>Central Bank and Trust |

| 15 | 10-9-07 | Bank Wire Transfer for $12,250 USD for New Gold #9 Investment | From: Della/Douglas Aire HSBC Bank Canada<br><br>To: American Oil and Gas Resources, Inc. Lexington, KY Acct # XXXX7144 Routing # 042100146 Central Bank and Trust |
|---|---|---|---|
| 16 | 11-23-07 | Bank Wire Transfer for $49,000 USD for New Gold #11 Investment | From: Jarvis Kosowan Globex Foreign Exchange<br><br>To: America Oil and Gas Resources, Inc. Lexington, KY Acct # XXXX7144 Routing # 042100146 Central Bank and Trust |
| 17 | 2-29-08 | Bank Wire Transfer for $48,912.80 USD for New Gold #16 Investment | From: Don Blishen Calgary, Alberta Canada Acct # XXXX-XXX8571<br><br>To: America Oil and Gas Resources, Inc. Lexington, KY Acct # XXXX7144 Routing # 042100146 Central Bank and Trust |
| 18 | 2-7-08 | Bank Wire Transfer for $49,000 USD for New Gold #16 Investment | From: Douglas VanHooren Bank of Montreal Acct # XXX2039<br><br>To: America Oil and Gas Resources, Inc. Lexington, KY Acct # XXXX7144 Routing # 042100146 Central Bank and Trust |

15

| 19 | 4-1-08 | Bank Wire Transfer for $25,000 USD for New Gold #17 Investment | From: John Sparkes Calgary, Alberta Canada CIBC Acct # XXXXXX-XX8232<br><br>To: America Oil and Gas Resources, Inc. Lexington, KY Acct # XXXX7144 Routing # 042100146 |

Each Count in violation of 18 U.S.C. § 1343.

## COUNT 20
### 18 U.S.C. § 1956(h)

13.    From in or about a date in 2005, the exact date unknown to the

Grand Jury, and continuing until the date of this Indictment, at Fayette County, in the

Eastern District of Kentucky, and other places known and unknown to the Grand Jury,

### BRYAN COFFMAN and
### MEGAN COFFMAN

defendants herein, did knowingly combine, conspire, and agree together, and with other

persons both known and unknown to the Grand Jury, to commit offenses against the

United States in violation of 18 U.S.C. §§ 1956 and 1957, to wit:

(a)  to knowingly conduct and attempt to conduct a financial transaction affecting

interstate and foreign commerce, which involved the proceeds of a specified unlawful

activity, that is mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, as

more specifically described in Counts 1-19 above, with the intent to promote the carrying

16

on of said specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity in violation of 18 U.S.C. § 1956(a)(1)(A)(i); and

(b)  to knowingly conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, that is mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, as more specifically described in Counts 1-19 above, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(I); and

(c)  to transport, transmit and transfer and attempt to transport, transmit and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, that is, mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, as more specifically described in Counts 1-19 above, in violation of 18 U.S.C. § 1956(a)(2)(A)(i); and

(d)  to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful

17

activity, that is, mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, as more specifically described in Counts 1-19 above, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(2)(B)(i); and

(e) to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater that $10,000, such property having been derived from a specified unlawful activity, that is, mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343, as more specifically described above, in violation of 18 U.S.C. § 1957.

All in violation of 18 U.S.C. § 1956(h).

## COUNT 21
### 18 U.S.C. § 1956(a)(1)(B)(I)

14.      On or about February 4, 2008, in the Eastern District of Kentucky and elsewhere,

### BRYAN COFFMAN and
### MEGAN COFFMAN

did knowingly conduct and attempt to conduct a financial transaction affecting interstate

18

and foreign commerce, to wit, the transfer of approximately 1.4 million dollars from a

Raymond James Financial Services Account #XXXX9062 in the name of Bryan Coffman

and Megan Coffman, to Raymond James Financial Services Account #XXXX2262 in the

name of Megan Coffman, which involved the proceeds of specified unlawful activity, that

is, mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343, as more

specifically described in Counts 1-19 above, knowing that the transaction was designed in

whole or part to conceal and disguise the nature, location, source, ownership, and control

of the proceeds of said specified unlawful activity and that while conducting and

attempting to conduct such financial transaction knew that the property involved in the

financial transaction represented the proceeds of some form of unlawful activity.

    All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### COUNTS 22-25
### 18 U.S.C. § 1956(a)(1)(B)(i)

    15.    On or about the dates set forth below, in the Eastern District of Kentucky

and elsewhere,

### BRYAN COFFMAN and
### MEGAN COFFMAN

did knowingly conduct and attempt to conduct the following financial transactions

affecting interstate and foreign commerce, which involved the proceeds of specified

unlawful activity, that is, mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, as more

specifically described in Counts 1-19 above, and knowing that the transaction was

19

designed in whole or part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| COUNT | DATE | AMOUNT | TRANSACTION |
|-------|------|--------|-------------|
| 22 | 7/22/08 | $150,000 | Wire transfer from Megan Coffman, PNC Account ending 1528 to Holland & Knight, LLC |
| 23 | 8/1/08 | $460,000 | Check from American Oil and Gas, Wachovia Account ending 2871 deposited to Megan Coffman Dacorta, American Founders Account ending 9802 |
| 24 | 8/6/08 | $450,000 | Wire transfer from Megan Coffman Dacorta, American Founders Account ending 9802 to Holland & Knight LLC |
| 25 | 8/6/08 | $310,000 | Wire transfer from Megan Coffman, PNC Account ending 1528 to Holland & Knight LLC |

All in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

### COUNTS 26-30
### 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i)

16.    On or about the dates set forth below, in the Eastern District of Kentucky and elsewhere,

### BRYAN COFFMAN and
### MEGAN COFFMAN

did knowingly conduct and attempt to conduct the following described financial transactions affecting interstate and foreign commerce, which involved the proceeds of

specified unlawful activity, that is, mail fraud in violation of 18 U.S.C. §§ 1341 and 1343, as more specifically described in Counts 1-19 above, with the intent to promote the carrying on of said specified unlawful activity and knowing that the transaction was designed in whole or part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity:

| COUNT | DATE | AMOUNT | TRANSACTION |
|-------|------|--------|-------------|
| 26 | 2/6/08 | $200,000 | Transfer of funds from American Oil & Gas, Central Bank Account ending 8382 to Bryan Coffman, Central Bank Account ending 6604 |
| 27 | 2/21/08 | $160,000 | Check from Bryan Coffman, Central Bank Account ending 6604 to Megan Coffman deposited in Megan Coffman, American Founders Bank Account ending 3826 |
| 28 | 2/21/08 | $140,000 | Debit transfer from Megan Coffman, American Founders Bank Account ending 3826 deposited to Dacorta, American Founders Bank Account ending 9802 |
| 29 | 2/25/08 | $151,000 | Wire transfer from Dacorta, American Founders Bank Account ending 9802 to the Jensen Law Firm, LLC, Charleston, South Carolina |
| 30 | 2/25/08 | $4,000 | Wire transfer from Dacorta, American Founders Bank Account ending 9802 to the Jensen Law Firm, LLC, Charleston, South Carolina |

Each Count in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(I).

## FORFEITURE ALLEGATION
## 18 U.S.C. § 981(a)(1)(C)
## 28 U.S.C. § 2461(c)
## 18 U.S.C. § 982(a)(1)

17.    In committing the felony offenses alleged in Counts 1 through 19 of this

Indictment, each punishable by imprisonment for more than one year,

**GARY MILBY,**
**BRYAN COFFMAN and**
**VADIM TSATSKIN,**
**aka VICTOR TSATSKIN**

shall forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. §

2461(c), any property, real or personal, which constitutes or is derived from proceeds

traceable to the commission of the scheme to defraud of which the defendants are

convicted, including but not limited to the following:

## MONEY JUDGMENT:

Approximately $34,000,000 (Thirty-Four Million Dollars), representing the
approximate amount of proceeds derived from the scheme to defraud and money
laundering and for which the defendants are jointly and severally liable.

## FINANCIAL INSTITUTION ACCOUNTS:

(1)    Raymond James Financial Services Account # XXXX2262 in the name of
Megan Coffman in the approximate amount of $1,475,799.73 and all
interest accruing thereon;

(2)    American Founders Bank Account # XXX9802 in the name of Megan
Coffman DBA DACORTA, LLC in the approximate amount of $40,046.51;

(3)    American Founders Bank Account # XXX3826 in the name of Megan
Coffman in the approximate amount of $5,593.16;

22

(4)    PNC Bank Account # XXXXXX6953 in the name of DACORTA, LLC in the approximate amount of $465,573.87;

(5)    Wachovia Account # XXXXXXXXX2871 in the name of American Oil and Gas in the approximate amount of $275,253.00;

(6)    Wachovia Account # XXXXXXXXX4179 in the name of Bryan Coffman in the amount of $115,951.76;

(7)    Traditional Bank Money Market Account # XX3555 in the amount of $174,157.73;

(8)    Traditional Bank CDARS Account #XXXXXX7314 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(9)    Traditional Bank CDARS Account #XXXXXX7349 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(10)    Traditional Bank CDARS Account #XXXXXX7373 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(11)    Traditional Bank CDARS Account #XXXXXX7381 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(12)    Traditional Bank CDARS Account #XXXXXX7403 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity;

(13)    Traditional Bank CDARS Account #XXXXXX7438 in the amount of $100,000.00, plus all interest accrued thereon to the time of maturity.

## CONVEYANCES:

2003 Solar Azimut yacht, Hull id. # XAX74077G203.

## REAL PROPERTY:

(1)    Real property and residence located at 4816 Chaffey Lane, Lexington, Fayette County, Kentucky, in the name of Megan Coffman;

(2)    Real property and residence located at 2032 Egret Crest Lane, Charleston, Charleston County, South Carolina, in the name of Corrie Anderson.

23

## SUBSTITUTE ASSETS:

If any of the property listed above, as a result of any act or omission of the defendants,

(1) cannot be located upon the exercise of due diligence

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States to seek the forfeiture of any other property in which the above defendants have an interest in, up to the value of the currency described above and pursuant to 21 U.S.C. § 853(p), as incorporated in 28 U.S.C. § 2461(c). These properties include, but are not limited to, the following real property:

(1) 4249 Steamboat Road, Lexington, Fayette County, Kentucky;

(2) 2556 Ashbrooke Drive, Lexington, Fayette County, Kentucky;

(3) 4752 Firebrook Blvd, Lexington, Fayette County, Kentucky;

(4) 3085 Arrowhead Drive, Lexington, Fayette County, Kentucky;

(5) 3200 Mammoth Drive, Lexington, Fayette County, Kentucky;

(6) 3873 Forest Green Drive, Lexington, Fayette County, Kentucky;

(7) 3152 High Ridge Drive, Lexington, Fayette County, Kentucky;

24

(8) 4200 Steamboat Road, Lexington, Fayette County, Kentucky; and

(9) 63 acres of land located in Green County, PVA Map #77-27-.02.04, transferred from Arimor Irrevocable Trust to Paul D. Milby.

18.     In committing the felony offenses alleged in Counts 20 through 30 of this Indictment, each punishable by imprisonment for more than one year,

**BRYAN COFFMAN and**
**MEGAN COFFMAN**

shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense, including but not limited to the specific property (financial institution accounts, real property) as referenced above.  Additionally, defendants shall forfeit a sum of money (money judgment) equal to the total amount of money involved in each offense for which the defendants are convicted.  If more than one defendant is convicted of an offense, the defendants so convicted are jointly and severally liable for the amount involved in such offense.  The substitute asset provision as outlined earlier in this forfeiture allegation also applies to this money judgment.

**A TRUE BILL**

**FOREPERSON**

**JAMES A. ZERHUSEN**
**UNITED STATES ATTORNEY**

25

## <u>PENALTIES</u>

**<u>COUNTS 1-19</u>:**    Not more than 20 years imprisonment, not more than $250,000 fine, and not more than 3 years supervised release.

**<u>COUNT 20-30</u>:**    Not more than 20 years imprisonment, not more than $500,000 fine or twice the value of the property involved in the transaction, whichever is greater.

**PLUS:**    Criminal Forfeiture of listed assets.

**PLUS:**    Mandatory special assessment of $100 per felony count.

**PLUS:**    Restitution if applicable.